Jackson *ex dem*. Robinson *against* Joseph Munson.

Same *against* Waterman.

Same *against* William Munson.

THESE causes were argued at a former term, and judgments given in favour of the plaintiff, with liberty for the attorney general to make application to the court, for compensation for the improvements made by the defendants. It appeared that the premises were a part of a royal grant to Sir *William Johnson*, who died seized thereof, after devising the same to his natural daughter, *Margaret Johnson*, since intermarried with *George Farley*, under whom the lessors of the plaintiff claimed. The premises were sold by the commissioners of forfeiture, under the act, *for the forfeiture of all the estates of persons who adhered to the enemies of this State*, passed the 22d *October*, 1779,* to the defendants or to those under whom they derived title, prior to the conveyance from the devisee of Sir *William Johnson*. The record of the conviction of *Margaret Johnson*, was of the term of *January*, 1783, and judgment of attainder was signed the 15th *July*, 1783.

*Woodworth*, attorney general, at the last term, moved that the writ of *habere facias possessionem* should be stayed, until the defendants should be paid for their improvements, agreeably to the act of the legislature of this state, passed the 12th *May* 1804.* He said, the question was of great importance, as it concerned many persons who held lands under the commissioners of forfeitures. It would, probably, be objected that the act was unconstitutional, as being against the provisions of the treaty ; but this court had decided that the act was constitutional.

*Afterjudgment for the plaintiff in ejectment, against a tenant, claiming as a purchaser from the commissioners for the sales of forfeited estates, the court ordered the writ of possession to be stayed, until the plaintiffs should make compensation to the tenant for his improvements, pursuant to the act of the legislature, passed the 12th May 1784.*

*'Greenleaf's Ed. of the laws of New-York, Vol. 1. p. 26.*

* Greenleaf's Ed. of the laws, Vol. 1. p. 127.

*Van Ness* contra. The plaintiffs in these causes recovered judgment on the ground, that the conviction of *Margaret Johnson* was illegal. If the commissioners have illegally attainted the person, under the forfeiture of whose estate the defendants claim, they have no right whatever. By the 5th article of the preliminary treaty of peace, between *Great Britain* and the *United States*, of the 30th *November*, 1782, it is agreed that no future confiscations should be made, nor any prosecutions commenced against any persons, on account of the part they had taken in the war. The attainder of Miss *Johnson* took place after the execution of this treaty, which, by the constitution, is declared to be the supreme law of the land, and paramount to all legislative acts. The act of 1784,* which requires the plaintiff to make compensation for the improvements, so far impairs this right, and is an impediment which contravenes that article of the treaty. The tenant, if he has any just claim for a compensation, must look to those under whom he holds, and who have undertaken to guaranty his title.

*Woodworth* in reply. The *legality* of the confiscation is not the question; the only inquiry is, whether, the defendant is a *purchaser* under the commissioners, and as such, within the provision of the act. It can hardly be denied, that the legislature might, notwithstanding the treaty, pass an act declaring that the rightful owner, should not be restored to his possession, without making a reasonable compensation for the improvements, made by the former occupant or owner. The plaintiff recov-

* The 1st section declares, that the deed or conveyance of the commissioners, shall operate as a warranty from the state to the purchaser, and that in case of eviction he shall have his remedy, in a manner to be provided by future acts ; " and if judgment in a due course of law, shall be " obtained for any lands, &c. which shall be sold by virtue of this act, against " any person or persons, having or deriving title thereto, from or under the " people of this state, or the said commissioners, the person so obtaining " judgment shall not have any writ of possession, nor obtain any possession " of such lands, &c. until they shall have paid, &c. the value of all improve. " ments, to be ascertained by two appraisers, &c.

ered judgment in this cause, on the ground, that the judgment of attainder was rendered, and the record signed, subsequent to the execution of the treaty. To require this compensation cannot be deemed an impediment, since the legislature, though they cannot take away the right of the party, may modify the *remedy*, so as to compel him to do justice. The last clause of the 5th article of the treaty, does not apply to attainders or attainted persons, it merely declares that " all persons who " have any interest in confiscated lands, either by debts, " marriage settlements or otherwise, shall meet with no " lawful impediment, in the prosecution of their just " rights." All the preceding part of the article which refers to attainted persons, is advisory, or recommendatory only, and is not binding on the legislature, or the courts of judicature. It is merely agreed, that congress shall earnestly *recommend* to the several states, to restore the confiscated estates, &c. It establishes no right. The last clause, it is true, is positive, definite, and obligatory, but it relates to a different description of claimants, and is not applicable to the case of *Margaret Johnson*, unless the word *otherwise* may be said to comprehend it. But that expression is not to be extended to the general description of persons or claims, in the part of the sentence which immediately precedes. The 6th article of the treaty, which provides that there shall be no future confiscations, does not apply to the case before the court. The act of 1784 creates no confiscation; it merely modifies the *remedy* of the plaintiff, so as to oblige him to make a reasonable compensation to the tenant, for the improvements he has made on the lands.

THOMPSON, J. Judgment having been recovered against the defendant in this case, application is now made under the statute of this state relative to the sale of confiscated estates, passed the 12th of *May*, 1784, for stay of execution, until compensation be made for the improvements, according to the provisions of the first section of the act. The

only question presented for decision is, whether the act can be considered as applying to this case? The premises in question were sold by the commissioners of forfeitures, as part of the estate of *Margaret Johnson*, who had been convicted under the aforesaid act for adhering to the enemy. The conviction, however, was not until *January*, 1783, and subsequent to the provisional articles of peace between the *United States* and *Great-Britain*, which were signed on the 30th of *November*, 1782. Unless the provisions in this treaty take the case out of the statute, there can be no doubt that the defendant must be compensated for his improvements before he can be turned out of possession. I am inclined, however, to think, that the operation, of the treaty will be to prevent the application of the statute to this case. The 6th article declares, " that there shall be no future confiscations made, nor any prosecutions commenced, against any person or persons, for or by reason of the part which he or they may have taken in the present war, and that no person shall on *that account, suffer any future loss or damage.*" All confiscations, then, after the signing of the treaty, must be considered null and void. The proceedings against *Margaret Johnson* were commenced prior to, but no judgment or conviction obtained until after the signing of the treaty. What then is to be considered the date of the confiscation? The act of attainder, passed the 22d of *October*, 1779, is explicit on that subject. It declares that the forfeitures shall be deemed to have accrued at the time of conviction. No right or title to the land could be vested in the people of this state until conviction, and if such conviction was absolutely void, the people never acquired any title, nor in any manner whatever succeeded to the rights of *Margaret Johnson*. We must consider the lessors of the plaintiff, as standing in the place of *Margaret Johnson*, and entitled to all the benefits of the treaty of which she could have availed herself. The crime for which she stood indicted and upon which the forfeiture was to accrue, was for *adhering to the enemies of this state.* The article of the treaty, above referred to, declares that no

person shall on that account suffer any future loss or damage either in person or property. · Had *Margaret Johnson* been the plaintiff in this cause, and it should be imposed upon her to pay for the improvements before she could have the effect of the judgment, it certainly would be a loss or damage, on account of the part she had taken in the war, or for adhering to the enemy, because, it would be a compensation required only in cases where there is a recovery of land sold as forfeited, on account of the very crime charged against her, and contrary to the general rule of law, on a recovery in an action of ejectment.

My opinion, therefore, is, that the treaty prevents the application of the statute to the present case, and that the plaintiff is entitled to the effect of his judgment, without making any compensation for the improvements.

KENT, C. J. declared himself to be of the same opinion.

LIVINGSTON, J. In *August Term* last, we gave judgment for the plaintiff, because the conviction of *Margaret Johnson*, under whom he claims, took place after signing the preliminaries of peace, between *Great Britain* and the *United States*, and was, therefore, void.

An application is now made to stay a writ of possession, until the defendant be paid for his improvements, on a valuation to be made, agreeably to the first section of the act for the speedy sale of confiscated estates, passed 12th *May*, 1784,

This motion is opposed, on the ground that the attainder, having been determined to be illegal, it would be contrary to the treaty of peace, to throw any obstacle in the way of recovering possession of the premises. Were the treaty susceptible of this construction, or were it even a doubtful case, I should not interfere, but let a *habere facias possessionem* go as in ordinary cases. But there is no article, to which it is necessary to give this interpretation.— The fifth and sixth articles only have been referred to. The fifth article embraces two descriptions of persons ; those whose estates had been confiscated, and such as had demands against the property. In favour of the first,

congress were to recommend certain measures to the legis-
latures of the respective states ; and as to the other, it is
expressly agreed, that they shall meet with no lawful impe-
diment in the prosecution of their just rights. The case of
the lessors of the plaintiff is evidently not embraced by this
article. If *Margaret Johnson's* estate had been confiscated,
she would have been included in the recommendatory part
of the article. It is equally clear, that claiming the land
itself, and not merely a demand against it, either by debt,
marriage, settlement, or otherwise, the other member of
the article does not apply to her.

The sixth article stipulates, " That there shall be no fu-
" ture confiscation, by reason of the part which any one
" may have taken in the war ; and that no one, on that ac-
" count, shall suffer any future loss or damage in his person
" or property, and that those who may be in confinement on
" such charges, at the time of the ratification of the treaty
" in *America*, shall be immediately set at liberty, and the
" prosecutions so commenced be discontinued."

The only and obvious meaning of this provision is, that
no more property shall be confiscated, and that all prosecu-
tions for political offences shall cease. There is nothing
then in the treaty, to deprive the legislature of the right of
providing by a general act, for the indemnification of those
who had, under the sanction of a title derived from the pub-
lic, made valuable improvements on lands. Such a regula-
tion was equitable, and necessary to prevent great injustice.
It could not be right, that those who had put expensive build-
ings on real estates, under what they conceived a *bona fide*
title, should lose them on eviction, or that they should be
reimbursed by the state for them. It was more natural, and
more consonant to equity, when the mistake was discovered,
that the owner of the soil to whom the improvements would
belong, and to whom they might be worth many thousand
pounds, should make a reasonable compensation for them.
This was not exposing him to a further loss of property, on
account of the part he had taken in the war, but only asking
him to pay for what, until such satisfaction was made, he

_could not in conscience claim as his own, that is, for build-ings erected, or valuable improvements made by others.— This was giving him a *quid pro quo.* My opinion, there-fore, is, that the writ of possession be stayed, until the va-lue of the improvements made by the defendant, be ascer-tained, and he be satisfied for the same.

TOMPKINS, J. was of the same opinion.

SPENCER, J. Having been formerly concerned for the defendant as attorney-general in this cause, I did not intend to have given any opinion; but the other judges being equally divided, and in compliance with their wishes, I am induced to say, that I concur in the opinion just delivered by Mr. Justice LIVINGSTON.          Rule granted.